UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
QUINTON BROWN WILTSHIRE,

                                        Plaintiff,

        – against –                                          **OPINION AND ORDER**

                                                             No. 13-CV-9169 (CS)

POLICE OFFICER PHIL WANDERMAN and
CITY OF YONKERS,

                                        Defendants.

-------------------------------------------------------------------------x

<u>Appearances:</u>

Quinton B. Wiltshire
Valhalla, New York
*Plaintiff* Pro Se

Rory McCormick
Associate Corporation Counsel for the City of Yonkers
Yonkers, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is Defendant Phil Wanderman's Motion for Summary Judgment.[1]  (Doc.

20.)  For the following reasons, the motion is GRANTED.

## I.        BACKGROUND

        The following facts are based upon the parties' Local Civil Rule 56.1 statements and

supporting materials, and are undisputed except as noted.

        Defendants are the City of Yonkers ("City") and Yonkers Police Officer Phil

Wanderman.  On October 10, 2012, at 1:00 pm, Officer Wanderman and his partner responded to

---

[1] The motion is purportedly filed on behalf of Officer Wanderman and the Yonkers Police Department ("YPD").
The YPD, however, was dismissed *sua sponte* on January 9, 2014, and is no longer a party to this case.  (Doc. 5.)

a radio call reporting two suspicious males looking into apartments at 150 Glenwood Avenue. (Ds' 56.1 ¶¶ 1-2; P's Response ¶¶ 1-2.)[2]  The suspects were described as two black males in their early twenties both wearing tan pants.  (Ds' 56.1 ¶ 1; P's Response ¶ 1.)  Officer Wanderman and his partner observed two males fitting that description walking westbound at the subject location.  (Ds' 56.1 ¶ 2; P's Response ¶ 2.)  Officer Wanderman recognized Plaintiff from prior police contact.  (Ds' 56.1 ¶ 2; P's Response ¶ 2.)  The officers conducted a field interview and searched the two men.  (Ds' 56.1 ¶ 2; P's Response ¶ 2.)[3]  Officer Wanderman recovered a yellow Bulova watch from Plaintiff's left sweatshirt pocket along with $297 from Plaintiff's right pants pocket.  (Ds' 56.1 ¶ 3; P's Response ¶ 3.)  Officer Wanderman then canvassed the complex, observed a window screen pushed in at Apartment F1, and spoke with the person who made the 911 call, who identified Plaintiff and the other individual as the suspicious males.  (Ds' 56.1 ¶¶ 4-5.)[4]

---

[2] "Ds' 56.1" refers to Defendants' Statement Pursuant to Local Civil Rule 56.1.  (Doc. 22.)  "P's Response" refers to Plaintiff's Response to Defendants' 56.1 Statement.  (Doc. 25 at 5.)

[3] Plaintiff asserts in his opposition to the motion (although not in a sworn document) that the search was not consensual, (see P's Response ¶ 2), but the dispute is not material because the Complaint contains no such assertion and no claim based on an allegedly illegal search.  Plaintiff raises such a claim in his response to the motion, but courts are not required to consider claims that are raised for the first time in a *pro se* plaintiff's papers in opposition to a motion.  *See Cohen v. New York*, 481 F. App'x 696, 697 (2d Cir. 2012) (summary order).  "[A]lthough courts afford *pro se* plaintiffs a fair measure of procedural latitude, this latitude typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers." *Salerno v. Murphy*, No. 11-CV-2525, 2012 WL 4714765, at *2 (S.D.N.Y. Sept. 27, 2012) (internal citation omitted) (citing *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order)); *see Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013) (summary order) (affirming district court's decision not to address claims by *pro se* litigant not raised in the complaint); *Oyewo v. Lahood*, 515 F. App'x 10, 11 (2d Cir. 2013) (summary order) ("[*Pro se* plaintiff] has abandoned her alternative work schedule claim by raising it for the first time in opposition to [defendant's] motion for summary judgment."); *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (summary order) ("The district court did not err in disregarding allegations [*pro se* plaintiff] raised for the first time in response to [defendant]'s summary judgment motion.").  If Plaintiff wishes to press the illegal search claim – which in all likelihood would result in only "slight or nominal damages," *Townes v. City of N.Y.*, 176 F.3d 138, 145 (2d Cir. 1999); *see Hayes v. Perotta*, 751 F. Supp. 2d 597, 602-04 (S.D.N.Y. 2010) – and believes there is justification for the Court to entertain it at this late stage, he may make a motion to amend, no later than August 21, 2015.  The Court will send Plaintiff copies of all unreported decisions cited in this Opinion and Order.

[4] Plaintiff disputes these facts on the basis that he has no knowledge of them, but offers no evidence to contradict them.  (See P's Response ¶¶ 4-5).

The officers then contacted the occupant of Apartment F1, who responded to the location and positively identified as his the yellow Bulova watch that had been in Plaintiff's possession. (Ds' 56.1 ¶ 6; P's Response ¶ 6.)  Plaintiff was arrested on charges of burglary in the second degree and criminal possession of stolen property in the fifth degree, and arraigned on the latter offense the next day.  (Ds' 56.1 ¶ 8; P's Response ¶ 8.)  On January 8, 2013, Plaintiff pleaded guilty to the charge of criminal possession of stolen property, and was sentenced on May 17, 2013, to a period of incarceration of one year.  (Ds' 56.1 ¶ 8; P's Response ¶ 8.)[5]

Plaintiff brings this suit under 42 U.S.C. § 1983 alleging a claim for false arrest and imprisonment in violation of his rights under the Fourth and Eighth Amendments and a claim for defamation of character.  (Doc. 2 at 5.)

## II.   DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

---

[5] Defendants cite Plaintiff's rap sheet as their support for this proposition.  (*See* D's 56.1 ¶ 8.)  While the police reports on which Defendants rely for other assertions in their Local Rule 56.1 Statement would be admissible in evidence under Federal Rule of Evidence 803(8), I am dubious that a rap sheet would be.  Nevertheless, even if the rap sheet is not admissible and therefore cannot be considered on this motion for summary judgment, *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (facts in support of or opposition to summary judgment must be admissible in evidence), I may take judicial notice of the fact that Plaintiff – as he admits – pleaded guilty to criminal possession of stolen property, because it is a matter of public record, *see Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("[T]he Court finds it proper to take judicial notice of plaintiff's guilty plea, conviction, and sentencing as a matter of public record.").

believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant

bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if

satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every

element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in

support of the [non-movant's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the

non-movant "must do more than simply show that there is some metaphysical doubt as to the

material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v.

Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where an affidavit is used to support or oppose the

motion, it "must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R.

Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d

Cir. 2008). In the event a party "fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may," among other things, "consider the fact undisputed for

purposes of the motion" or "grant summary judgment if the motion and supporting materials –

4

including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Because Plaintiff is proceeding *pro se*, the Court must read his papers liberally and construe them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted). Nevertheless, "when confronted with evidence of facts that would support [the opposing party's motion for] summary judgment, the [*pro se*] plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 642 (S.D.N.Y. 2014).

### B.  False Arrest Claim Against Officer Wanderman

Plaintiff's false arrest claim[6] must be analyzed under the law of the state in which the arrest occurred. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, to prevail on a false arrest claim, a plaintiff must demonstrate that (1) the defendant intentionally confined her, (2) the plaintiff was aware of being confined, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not justified or otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003).

An arrest is justified or privileged if it is based on probable cause. *LaFontaine v. City of N.Y.*, No. 08-CV-1555, 2009 WL 3335362, at *5 (S.D.N.Y. Oct. 14, 2009); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for

---

[6] In his Complaint, Plaintiff characterizes this claim as one for "False Arrest and False Imprisonment." (*See* Doc. 2 at 5.) "In this Circuit, courts analyze false arrest and false imprisonment claims identically." *Michaels v. City of N.Y.*, No. 10-CV-2666, 2011 WL 570125, at *5 (S.D.N.Y. Feb. 16, 2011). Accordingly, I refer to Plaintiff's claim as one for "false arrest," and the analysis applies equally to any separate claim of false imprisonment.

Plaintiff asserts that his false arrest violated his rights under the Fourth and Eighth Amendments. False arrest claims arise under the Fourth Amendment, *see Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), but the Eighth Amendment's prohibition against cruel and unusual punishments is not relevant in the false arrest context.

false arrest where the arresting officer had probable cause.").  Probable cause exists when an officer has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  *Jocks*, 316 F.3d at 135 (quoting *Weyant*, 101 F.3d at 852).  "[P]robable cause is evaluated under an objective standard," *Michaels*, 2011 WL 570125, at *5 (internal quotation marks omitted), under which "courts look to the information available to the law enforcement officer at the time of the arrest and consider the 'totality of the circumstances,'" *id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *accord Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).  Because probable cause is evaluated under an objective standard, it need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer," and "the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'"  *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  The focus is simply on "the validity of the *arrest*, and not on the validity of each charge."  *Id.* at 154 (emphasis in original).  In other words, if Officer Wanderman had probable cause to arrest Plaintiff for any crime, the arrest was privileged and cannot form the basis of a false arrest claim under § 1983.

When an arrestee pleads guilty to a charge stemming from his or her arrest, probable cause to make the arrest is conclusively established.  *Cuellar v. Love*, No. 11-CV-3632, 2014 WL 1486458, at *5 (S.D.N.Y. Apr. 11, 2014) ("A conviction or guilty plea conclusively establishes that probable cause existed and bars a § 1983 claim.").  Plaintiff's false arrest claim as to Officer Wanderman thus fails as a matter of law because he pleaded guilty to the charge of criminal possession of stolen property.  *See id.*; *see also Maietta v. Artuz*, 84 F.3d 100, 102 n.1

(2d Cir. 1996) (plaintiff cannot challenge validity of arrest under § 1983 after guilty plea). The fact that Plaintiff's burglary charge was dropped is irrelevant, because probable cause to arrest for any crime is enough to defeat a false arrest claim. *See Masetta v. Town of Irondequoit*, No. 06-CV-6143, 2010 WL 4823684, at *4 (W.D.N.Y. Nov. 29, 2010) (dismissing plaintiff's false arrest claim where plaintiff was arrested for resisting arrest and pleaded guilty to disorderly conduct because guilty plea established probable cause to arrest as matter of law); *Sealey v. Fishkin*, No. 96-CV-6303, 1998 WL 1021470, at *4 (E.D.N.Y. Dec. 2, 1998) (plea of guilty to lesser offense of disorderly conduct forecloses false arrest claim pursuant to § 1983 because "[b]y pleading guilty to disorderly conduct, plaintiff necessarily acknowledged that he was engaged in some unlawful activity for which the police could properly take him into custody"). And, in any event, Officer Wanderman had probable cause to arrest Plaintiff for both criminal possession of stolen property and burglary: Plaintiff and his associate matched the description in the 911 call, were positively identified by the 911 caller, and were found near the scene of the crime, and Plaintiff was in possession of a watch that the owner of the burglarized apartment identified as stolen. Accordingly, Plaintiff's false arrest claim against Officer Wanderman is dismissed.

### C.  Claims Against the City

On January 9, 2014, in the same order in which the Court dismissed the YPD as a Defendant, the Court ordered that the City of Yonkers be added as a Defendant, and it was so added. (*See* Doc. 5.) The City has not moved for summary judgment, and defense counsel seems not to have noticed that the City is a Defendant. The Court finds, however, that granting summary judgment in favor of the City *sua sponte* is appropriate here.

"District courts have the power to enter summary judgment *sua sponte* only if the losing party was on notice that it had to come forward with all of its evidence." *Pugh v. Goord*, 345 F.3d 121, 124 (2d Cir. 2003) (internal quotation marks and alterations omitted). "A *sua sponte* award of summary judgment may well be appropriate if it is clear that all of the evidentiary material a party might submit is before the court and no material issue of fact exists." *Id.* at 124-25 (citing *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)). When the losing party is *pro se*, the Court must also satisfy itself that the *pro se* litigant is aware of Rule 56's requirements. *Id.* at 125. But the court "need not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice, or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999) (citation omitted).

Plaintiff here had adequate notice of Rule 56's requirements and the consequences of summary judgment. Defendants' Notice to Pro Se Litigant Opposing Summary Judgment explained that summary judgment is a method of deciding a case on written materials before a trial and that Plaintiff must respond to the motion with evidence and sworn affidavits instead of resting on the allegations in his complaint. (Doc. 21.) Defendants' brief also adequately explained the summary judgment standard. (Doc. 24 at 1-2); *see Vital*, 168 F.3d at 621 (adversary's papers may provide the requisite notice). Moreover, Plaintiff's submission, titled "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment," contains a response to Defendants' Rule 56.1 statement, and some evidence – including his notice of claim and Officer Wanderman's police report – is attached, indicating that Plaintiff was aware of how to respond to the motion. *See Vital*, 168 F.3d at 621 ("[T]he nature of the papers submitted by the litigant and the assertions made therein as well as the litigant's participation in

proceedings before the District Court may assist in determining whether the *pro se* litigant had [an understanding of Rule 56].")

Plaintiff was on notice that he had to come forward with all of the evidence supporting his false arrest claim against Officer Wanderman, and that is all that is required to adjudicate his claim against the City:  because the claim against Officer Wanderman fails, the claim against the City fails as a matter of law.  To hold a municipality liable under § 1983, Plaintiff must prove three elements:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of N.Y.,* 490 F.3d 189, 195 (2d Cir. 2007); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor."  *Henry-Lee v. City of N.Y.*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010).  Thus, "a court granting summary judgment for the defendants on the underlying constitutional claim must also grant summary judgment on the associated *Monell* claim."  *Id.*; *accord Morales v. City of N.Y.*, 752 F.3d 234, 238 (2d Cir. 2014). Because Plaintiff cannot establish a violation of his right to be free from false arrest, the City is entitled to summary judgment on Plaintiff's false arrest claim.[7]  *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying

---

[7] Plaintiff may not have been on notice to produce all evidence relating to the City's policy, practice or custom, because Defendants' counsel did not brief the issue, although Plaintiff appears to have understood the motion as being made by the City.  (*See* Doc. 25 at 1-3 (identifying Defendants as "City of Yonkers and Police Officer Phil Wanderman" and requesting denial of "Defendants['] Motion for Summary Judgment").  Even if Plaintiff did not have such notice, no prejudice would result from the deficiency, because even if there were factual disputes over the existence of a municipal policy, there are none with respect to the existence of an underlying violation.  There is no fact issue for trial where a plaintiff has failed as a matter of law to establish one of the essential elements of his claim.  *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 80 (2d Cir. 2014) ("Before granting summary judgment *sua sponte* . . . a district court must assure itself that following the procedures set out in Rule 56(a)-(e) would not alter the outcome . . . [and] that the record reflects the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment.") (internal quotation marks, citation, and alterations omitted).

constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.")

Because Rule 56(f) gives the Court discretion to grant summary judgment as to a nonmovant only after "giving notice and a reasonable time to respond," Fed. R. Civ. P. 56(f)(1), Plaintiff may have until August 21, 2015, to show cause why summary judgment should not be entered in favor of the City of Yonkers on his false arrest claim.

### D. Defamation

Officer Wanderman and the City are also entitled to dismissal of Plaintiff's state-law defamation claim,[8] which, Plaintiff states in his brief, stems from Officer Wanderman's arrest report.[9]  (Doc. 25 at 3.)  New York's General Municipal Law provides that

> [n]o action . . . shall be prosecuted or maintained against a city . . . for personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless . . . a notice of claim shall have been made and served upon the city . . . in compliance with section fifty-e of [the New York General Municipal Law].

---

[8] Plaintiff has not identified under what law he brings his defamation claim.  Defamation "is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."  *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  While defamation combined with some other harm may amount to a deprivation of one's constitutional liberty interest under the Due Process Clause, and therefore give rise to what is called a "stigma-plus" claim, *see Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994), the Complaint does not assert such a claim, and only alleges violations of the Fourth and Eighth Amendments, (*see* Doc. 2 at 5). Given that Plaintiff appears to have been a New York resident at the time of his arrest, (*see* Declaration of Rory McCormick, (Doc. 23), Ex. A), Defendants are a New York municipality and its employee, and all of the events at issue in this case, including the allegedly defamatory statements contained in the police report, took place in New York, I find that New York law governs Plaintiff's defamation claim, *see Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 163 (E.D.N.Y. 2014) (applying New York law to defamation claim where plaintiffs did not address which state's law applied but plaintiffs were New York residents and defamatory statements were made while plaintiffs were in New York) (citing *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001)); *Condit v. Dunne*, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004) ("In a defamation case where the statements at issue are published locally, [the parties' domiciles and the locus of the tort] are mutually reinforcing, and together they effectively facilitate the choice of law analysis.").

[9] Based on Plaintiff's opposition to the motion to dismiss, (*see* Doc. 25 at 3), and the portion of the report underlined in the Complaint, (*see* Doc. 2 at 8), Plaintiff apparently objects to the officer's comment to the effect that Plaintiff was known to Officer Wanderman as part of an extended family known to have committed and suspected of having committed burglaries in Yonkers.

N.Y. Gen. Mun. L. § 50-i(1).  It further provides that for a "case founded upon tort," notice of the claim must be served "within ninety days after the claim arises."  *Id.* § 50-e(1)(a).  "Such notice of claim is a condition precedent to the maintenance of an action against such government entities."  *Robinson v. City of N.Y.*, No. 00-CV-0426, 2002 WL 188353, at *1 (S.D.N.Y. Feb. 6, 2002).  Thus "[a] plaintiff's state law tort claims in a federal civil rights action against police officers employed by the city should be dismissed when plaintiff's notice of claim is filed more than 90 days after the claims arose."  *Forney v. Forney*, No. 13-CV-7193, 2015 WL 1470451, at *6 (E.D.N.Y. Mar. 30, 2015) (internal quotation marks and alteration omitted).  Plaintiff's arrest occurred, and Officer Wanderman's report was written, on October 10, 2012.  Plaintiff presumably got a copy of his guilty plea in January 2013.  He signed his notice of claim on December 20, 2013, well more than 90 days after his claim arose.  (*See* Doc. 25 at 10.)  Plaintiff is thus barred from asserting his state-law defamation claim.

Further, even if the notice of claim had been timely filed, it contains no intimation that Plaintiff intended to pursue a defamation claim, (*see id.* at 10-11), and thus cannot suffice to support such a claim in this lawsuit.  *See Hargroves v. City of N.Y.*, Nos. 03-CV-1668, 03-CV-3869, 03-CV-5323, 03-CV-4646, 2014 WL 1271024, at *5-7 (E.D.N.Y. Mar. 26, 2014).[10]

As noted above, because the City has not moved for summary judgment, and in accordance with Rule 56(f), Plaintiff may have until August 21, 2015, to show cause why

---

[10] When this motion was filed, on February 25, 2015, Defendants' counsel filed an incomplete memorandum of law on the Court's electronic docket and provided an incomplete courtesy copy to chambers; both versions omitted pages 4 and 5.  (*See* Doc. 24.)  Counsel filed a complete version on June 8, 2015, which revealed that pages 4 and 5 contained Defendants' arguments regarding Plaintiff's defamation claim.  (*See* Doc. 27.)  The Court does not know whether Plaintiff received a full or incomplete version of the brief.  Ordinarily, the Court would grant Plaintiff an opportunity to respond to the corrected brief, but in the circumstances here any response would be futile.  Plaintiff submitted his notice of claim as evidence supporting his opposition to the present motion, and it is deficient on its face.  (*See* Doc. 25 at 10-11.)  "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim."  *Dingle v. City of N.Y.*, 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010).  Thus I find dismissal appropriate.

summary judgment should not be granted in favor of the City of Yonkers on his defamation claim.

**III.       CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and all claims against Officer Wanderman are dismissed.  No later than August 21, 2015, Plaintiff may show cause, in writing and supported by evidence, as to why the Court should not grant summary judgment in favor of the City of Yonkers on both claims against it.  Failure to do so will result in dismissal of the remaining claims.  The Clerk of Court is respectfully directed to terminate Officer Wanderman as a party and terminate the pending motion, (Doc. 20).

**SO ORDERED.**

Dated: July 10, 2015
        White Plains, New York                        _____
                                                      CATHY SEIBEL, U.S.D.J.

12